**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

SHEET METAL WORKERS INTERNATIONAL
ASSOCIATION, LOCAL UNION NO. 33,

                          Petitioner,

v.                                              CIVIL ACTION NO.  5:10-cv-00951

BECKLEY MECHANICAL, INC.,

                          Respondent.


**MEMORANDUM OPINION AND ORDER**

        In this matter, Petitioner, Sheet Metal Workers International Association, Local Union No.

33, ("Union") seeks to enforce an $82,000.00 arbitration award against Respondent, Beckley

Mechanical, Inc., ("BMI") pursuant to Section 301 of the Labor Management Relations Act, 29

U.S.C. § 185 and 9 U.S.C. § 9.   BMI opposes the enforcement and moves to vacate the arbitration

award.  Upon consideration of the parties' submissions and for the reasons that follow, the Union's

Petition is granted and BMI's motion to vacate the award is denied.


                *I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

        Beckley Mechanical, Inc. ("BMI") is a signatory to the collective bargaining agreement ["the

Agreement"] between Sheet Metal Workers' Local Union No. 33 International Association and

Southern West Virginia Sheet Metal and Roofing Contractors' Association Charleston District.  This

Agreement includes, *inter alia*, provisions for the payment of wages, hiring procedures and the

supply of labor.  The Agreement also sets forth a multi-tiered grievance process for the resolution

of disputes.  This process begins with the employer and union representative attempting to resolve the dispute directly.  (*Id.* at 19.)  If the grievance is not settled, either party may appeal the dispute before the Local Joint Adjustment Board ("LJAB") in the geographic area where the work was performed or in the jurisdiction of the employer's home. (*Id.* at 19-20.)  The LJAB is comprised of "three management and three labor representatives" (Petition at 3) with both having an equal number of votes. (Petitioner's Ex. B, Article X at 20.)  The decision of this body is final and binding unless the decision results in a deadlock.  A notice of appeal to the LJAB shall be given within thirty (30) days after the decision.  If the LJAB's decision results in a deadlock or if the LJAB fails to act, the grievance may be appealed jointly or by either party to a Panel consisting of one representative appointed by the Labor Co-Chairman of the National Joint Adjustment Board and one representative appointed by the Management Co-Chairman of the National Joint Adjustment Board.  Unless there is a deadlock at the Panel level, the Panel's decision is final and binding. Finally, either party may appeal that decision to the National Joint Adjustment Board ("NJAB").

On July 21, 2009, and August 12, 2009, Union Representative Randy Gombos filed two grievances against BMI, "alleging violations of Articles II, V, and VIII, and Addendums C and G of the Agreement, for: 1) not paying bargaining  unit  employees  the  proper wage rates; 2) subcontracting work to entities that do not have an Agreement with Local 33; and  3) violating the hiring procedures." (Petition to Enforce Arbitration Award ("Petition") (Document No. 1) at 3; Petitioner's Ex. C, Letter to William Mahaffey, President of BMI, from Reggie Hohenberger, Business Manager/President of Sheet Metal Workers' Local No. 33.)[1]  The parties sought to resolve

---

[1]  Mr. Gombos amended his August 12, 2009, grievance on August 19, 2009, to "reflect[] the addition of misconduct under Article V 'Membership' and Addendum C 'Hiring Practice'" of the Standard Form of Union Agreement."  (Petitioner's Ex. C.)

the grievances, pursuant to the Agreement's grievance procedure.  (*See* Petitioner's Ex. B, Article X.)  The grievances were brought before the LJAB on September 10, 2009, at the Southern West Virginia Sheet Metal and Roofing Contractors' Association in Charleston, West Virginia.  Upon a review of "evidence, including testimony and documents," the LJAB unanimously found BMI "guilty of . . . not paying bargaining unit employees the proper wage rates; subcontracting work to entities that do not have an Agreement with Local 333; and violating the hiring procedures in violation of the Agreement."  (Petitioner's Ex. E, Decision of Local Joint Adjustment Board November 9, 2009 (Document No. 1-5) at 1.)  Consequently, the LJAB ordered BMI to submit to an audit by a third-party accounting firm for the time period of April 1, 2009, to August 19, 2009, and to produce its complete "Ledger Detail" for that period within fourteen (14) days of the decision. The LJAB explained in its decision that the Ledger "is necessary to determine who has been paid by BMI at what rate and for how many hours, and to determine what work BMI has subcontracted in violation [of the Agreement.]"  (*Id.*)  The LJAB retained jurisdiction over the dispute until it could review the findings of the accounting firm and determine any monetary damage which would be assessed against BMI.  (*Id.*)

On November 12, 2009, BMI sought to narrow the scope of the requested documents. (Respondent's Ex. B, November 12, 2009, Letter from Fred F. Holroyd, counsel for BMI, to Wayne Fletcher, Financial Secretary of Sheet Metal Workers International Association (Document No. 7-1) ("agree[ing] to provide . . . all pertinent information for the Board to make an intelligent decision on the grievance[,]" but explaining that the general ledger contained information which is not material to the "inquiry.")  BMI, through counsel, requested the LJAB to "spell out specifically what information you seek out of the ledger" and stated that it would consider the request and provide the

3

information "unless it is [determined by BMI to be] outside the scope of the Board's inquiry." (*Id.*)
On February 3, 2010, the Union, in a letter to William Mahaffey, President of BMI, asserted that
BMI had not complied with the LJAB's November 9, 2009, decision.   (Respondent's Ex. C,
February 3, 2010, Letter from Wayne Fletcher to William Mahaffey (Document No. 7-1)).  The
LJAB amended its request to a discrete list of times and directed BMI to produce the documents by
February 17, 2010.[2]  In response, BMI produced "a list of all projects on which [it] performed work
from April through August 2009; [c]opies of all time cards submitted by sheet metal employees on
projects performed [during that period], and [c]opies of all 1099s issued by [it] in 2009.
(Respondent's Ex. D, February 16, 2010, Letter from Brian D. Yost, counsel for BMI, to Randy
Gombos (Document No. 7-1)).

Upon a review of the materials submitted, on February 26, 2010, the LJAB issued a
supplemental decision fining BMI $82.000.00 payable to the SMW 33 Legal Defense Fund as the
value of the three projects wherein BMI admitted to using non-union sub-contractors. (Petitioner's
Ex. A (Document No. 1-1))   The LJAB considered that BMI did not provide sufficient supporting
documentation of the projects.  The Board ordered BMI to pay the total amount within thirty (30)
days. On March 2, 2010, Wayne Fletcher forwarded a copy of the LJAB's supplemental decision
to BMI's president Mr. Mahaffey via certified and first class regular mail. (Petitioner's Ex. F, March
2, 2010, Letter from Wayne Fletcher to William Mahaffey (Document No. 1-6)).   BMI neither
appealed this decision, nor paid the $82.000.00.

---

[2] The LJAB requested "a list of all projects on which Beckley Mechanical performed work from April through
August 2009, including copies of the bid sheets Beckley submitted for the projects; copies of all time cards submitted
by all employees on all projects Beckley performed work on from April through August, 2009, and copies of any and
all 10099s Beckley issued for the year."  (*Id.*)

4

On July 23, 2010, Petitioner moved the Court for an order confirming the arbitration award and to enter judgment pursuant to 9 U.S.C. § 13(c).  Petitioner asserts that the LJAB had the authority to make the award pursuant to the Agreement and that the award "draws its essence from the collective bargaining agreement."  (Petition at 6.)  On August 26, 2010, Respondent filed its Response in Opposition to Petition to Enforce Arbitration Award and Motion to Vacate Arbitration Award ("Oppn") (Document No. 6).[3]  BMI argues that the Petition should be denied and the award vacated because:  the LJAB does not have the authority to assess a fine against it; the LJAB based its decision on a period more than thirty (30) days prior to the grievance; the LJAB's hearing was not held timely as required by the Agreement; and the award violates Section 8(a)(2) and (b)(6) of the National Labor Relations Act, in that the award was an impermissible attempt to require an employer to contribute financially to the Union and that the award required the Employer to pay or deliver to the Union money exacted for services which were not performed, respectively.  (Oppn at 1-6.)  Additionally, BMI argues that in 2004, it entered into a contract with Local 33 in which BMI agreed to become a signatory of the collective bargaining agreement.  BMI asserts that this contract is void as a matter of public policy–based on portion of unlawful consideration provided for in this contract–which requires a finding that BMI never had any obligation under the Agreement and  is not subject to the decision of the LJAB. (*Id*. at 6-10.)  In its Reply in Further Support of Petitioner's Motion to Enforce Arbitration Award and Memorandum in Opposition to Respondent's Motion to Vacate Arbitration Award ("Reply") (Document No. 10)), Petitioner asserts that BMI's motion to vacate is not timely and maintains that the award must be enforced.  Additionally, Petitioner argues

---

[3]  On September 9, 2010, Petitioner moved to strike BMI's responsive filing as untimely because it was filed one week outside of the established deadline and requested that this Court enter a default judgment against BMI for its "fail[ure] to plead or defend this matter." (Document No. 9 at 1.)  This Court denied the motion on March 10, 2011. (Order (Document No. 15)).

that the Court's inquiry is limited in scope and that an examination of the merits of the award is not warranted. Petitioner contends that if such an examination is undertaken, BMI's motion must be denied because it consented to the authority of the arbitrator, it is not within the jurisdiction of this Court to determine if the arbitration award violated Sections 8(a)(2) or (b)(6) of the National Labor Relations Act, and the collective bargaining agreement between the parties is not void as a matter of public policy.  BMI did not file a reply.

Subsequent to the LJAB's imposition of the award, the filing of the instant petition and separate from the instant litigation, BMI filed an unfair labor practice charge against the Union alleging violations under Section 8(a)(2) and (b)(6) of the National Labor Relations Act.  On October 28, 2010, the NLRB Regional Director dismissed the charge finding that the evidence failed to establish a violation of either of the challenged sections of the National Labor Relations Act. BMI appealed this decision on November 3, 2010.  On January 5, 2011, the appeal was dismissed substantially for the reasons set forth by the Acting Regional Director.  The parties sought to supplement the record with these decisions.  On March 10, 2011, the Court allowed the submissions.

## II. STANDARD OF REVIEW

The Federal Arbitration Act (the "FAA") provides that "at any time within one year after the [arbitration] award is made any party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."  9 U.S.C. § 9.  The scope of judicial review of an arbitration award is "among the narrowest known at law." *Three S. Del., Inc. v. Dataquick Info. Sys., Inc.,* 492 F.3d 520, 527 (4th Cir.2007) (quoting *Apex Plumbing Supply, Inc. v. U.S. Supply Co., Inc.,* 142 F.3d 188, 193 (4th Cir.1998)).  The Court of Appeals for the Fourth

Circuit has "explained that expansive judicial scrutiny of such awards would undermine important benefits of arbitration, such as avoiding the delay and expense associated with litigation." *AO Techsnabexport v. Globe Nuclear Services and Supply GNSS, Ltd.*, No. 09-2064, 2010 WL 5158556, *3 (4th Cir. Dec. 15, 2010) (citing *Dataquick,* 492 F.3d at 527). Consequently, in reviewing arbitration awards, "a district . . . court is limited to determin[ing] whether the arbitrators did the job they were told to do–not whether they did it well, or correctly, or reasonably, but simply whether they did it." *Dataquick,* 492 F.3d at 527 (quoting *Remmey v. PaineWebber, Inc.*, 32 F.3d 143, 146 (4th Cir. 1994) (internal quotation marks omitted)). To that end, in considering a petition to enforce an arbitration award the court "may determine only whether the arbitrators acted within the scope of their authority[.]" *AO Techsnabexport*, 2010 WL 5158556, * 3 (citing *Remmey*, 32 F.3d at 146.) An arbitration award is upheld so long as it "draws its essence from the collective bargaining agreement" and is not merely the arbitrator's "own brand of industrial justice." *Steelworkers v. Enter. Wheel & Car Corp.,* 363 U.S. 593, 597 (1960). Moreover, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Parsons v. Power Mountain Coal Co.,* 604 F.3d 177, 181 (4th Cir. 2010) (citing *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 39(1987); *see also Mountaineer Gas Co. v. Oil, Chem. & Atomic Workers Int'l Union,* 76 F.3d 606, 608 (4th Cir.1996). Therefore, on judicial review, an arbitration award "is entitled to a special degree of deference." *Upshur Coals Corp. v. United Mine Workers of Am. Dist. 31*, 933 F.2d 225, 228 (4th Cir. 1991).

*III.  DISCUSSION*

"On application for an order confirming the arbitration award, the court 'must grant' the order 'unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title.'" *Hill Street Associates, LLC v. Mattel, Inc*., 552 U.S. 576, 587 (2008) (quoting 9 U.S.C. § 9). In order for a reviewing court to vacate an arbitration award, the moving party, here BMI, must sustain the heavy burden of showing one of the grounds specified in 9 U.S.C. §10.[4]   However, 9 U.S.C. §12 sets forth a temporal limitation by which such a motion must be made.  In relevant part, Section 12 states that a "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered."  9 U.S.C. §12.  Therefore, while BMI raises several affirmative defenses to the enforcement of the LJAB award, this Court finds that a review of BMI's motion to vacate is not required because the motion is untimely.

In this case, the LJAB issued its supplemental decision imposing the disputed award on February 26, 2010.  On March 2, 2010, a copy of that decision was delivered to BMI's president. In the months that followed, BMI did not seek to appeal that decision to the LJAB or petition the court to vacate the award.  It was only on August 26, 2010, six months after the issuance of the

---

[4]   The FAA provides that a court may only vacate an arbitration award on one of the following grounds:

(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon  the subject matter submitted was not made.

 9 U.S.C. § 10.

award, that BMI, in response to a petition for confirmation, sought to vacate the award.  In *Taylor v. Nelson*, the Fourth Circuit "adopt[ed] the rule embraced by the Second Circuit in *Florasynth, Inc. v. Pickholz*, 750 F.2d 171 (2d Cir. 1984), where the court held that once the three-month period has expired, an attempt to vacate an arbitration award could not be made even in opposition to a later motion to confirm." *Taylor v. Nelson*, 788 F.2d 220, 225 (4th Cir. 1986).  On the record before this Court, BMI does not explain or offer any argument supporting the timeliness of its motion or whether the filing of the same was necessarily delayed for some exception which operates to excuse its failure to make a timely motion.  Thus, this Court denies BMI's motion to vacate the LJAB's award as untimely submitted.

Therefore, the issue before this Court is whether the parties' collective bargaining agreement gave the LJAB the authority to issue the award and whether the award "draws its essence from the collective bargaining agreement."  With respect to the former contention, Section Five of the parties' collective bargaining agreement provides that

> A Local Joint Adjustment Board, Panel and the National Joint Arbitration Board are empowered to render such decisions and grant such relief to either party as they deem necessary and proper, including awards of damages or other compensations.

(Petitioner's Ex. A, Article X, Section 5 at 21.)  BMI argues that the LJAB did not have the authority to assess a fine against it. This Court disagrees.  The very language of the Agreement demonstrates that the parties did not solely contemplate that any relief ordered by the LJAB would be confined to an award of "damages" alone.  Instead, the Agreement provides for the granting of relief it "deem[s] necessary and proper, including . . . *other compensations*."  (*Id*.) (Emphasis supplied).  While the Agreement does not define the terms "damages" or "other compensations"

there is nothing in the Agreement which warrants a finding of interpretation that the broad term "other compensations" does not encompass the assessment of a fine, or pecuniary penalty. Based on the LJAB's decision in this case, it appears that the award was borne from the LJAB's interpretation and application of this provision.  In light of the broadness of the term "other compensations," it is more than arguable that the LJAB's application of this provision was rational. "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed a serious error does not suffice to overturn [its] decision." *U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO*, 204 F.3d 523, 527 (4th Cir. 2000) (citations and internal quotation marks omitted). Therefore, this Court cannot find that the arbitrator exceeded its authority in applying this term of the Agreement to the conduct it found to be in violation of the Agreement.  Moreover, Section Five provides that the "relief" could be given to either party; therefore, BMI's opposition to the award being payable to the Union is of no moment.

As an aside, this Court notes that the issuance of the fine is the result of BMI's own making. In this case, the LJAB, upon consideration of the grievances and evidence adduced at the September 10, 2009, hearing, found unanimously that BMI violated the Agreement for using non-union sub-contractors and violating wage and hiring practices.  In an effort to determine the nature of any damages award, the LJAB directed BMI to submit to an independent audit by producing its general ledger for the applicable time period to the CPA.  Despite the use of a third-party accountant, BMI refused to provide the requested information based on its concern that "half of the Board consists of our competitors and the ledger contains proprietary and confidential information." (Respondent's Ex. B.) BMI sought to narrow the scope of the Board's inquiry and upon receiving a second request

for the production of a specific subset of documents, BMI did not submit all of the materials requested. The LJAB seemingly found BMI's production insufficient by acknowledging that while BMI's document identified three projects of which it admits to subcontracting to non-union contractors during the relevant time period, BMI failed to submit evidentiary or supporting materials with its document or include the number of hours worked. (*Id*.)  The LJAB determined that the total amount of the three projects according to BMI's document was $82,000.00.  As a result, the LJAB unanimously voted "in light of BMI's refusal to produce information requested by the LJAB to determine specific damages" to fine BMI the value of the three project in which it used non-union subcontractors in violation of the Agreement.  (*Id*.)  Based on the foregoing, this Court finds that the Agreement provided the LJAB the authority to assess the fine against BMI, where as here, BMI failed to provide the Board with sufficient documentation to permit the calculation of an entire damages award.

With respect to whether the award "draws its essence from the Agreement" at issue, this Court finds that it does.  The Fourth Circuit has held that "an arbitration award fails to draw its essence from the agreement . . . 'when an arbitrator has disregarded or modified unambiguous contract provisions or based an award upon his own personal notions of right and wrong.'" *Choice Hotels Int'l v. SM Prop. Mgmt., LLC*, 519 F.3d 200 (4th Cir. 2008) (citing *Dataquick Info. Sys., Inc.*, 492 F.3d at 528.)  The parties' Agreement governed the issues the LJAB considered in Mr. Gombos' grievances.  The LJAB found BMI's conduct to be in violation of the Agreement–a finding which BMI does not dispute before this Court.   This finding by the LJAB is entitled to deference.  Considering the LJAB's conclusion that BMI violated the Agreement and its supplemental decision in which it imposed the fine, we cannot say that the award does not draw from the essence of the

collective bargaining agreement. On the record before the Court, there is no basis to find the LJAB crossed the line and issued an award according to its own notion of fairness where as here the award was based in part on BMI's failure to provide the LJAB with sufficient documentation to fashion a complete award of damages.

Based on the foregoing, this Court finds it unnecessary to address BMI's assertions of opposition.  To be sure, several of BMI's arguments were raised for the first time before this Court. Specifically, BMI argues that the LJAB did not conduct its hearing within fourteen (14) days of the request for its services, as provided for in the Agreement; that the LJAB decision considered the period from April 2009 through August 2009 in its award when the agreement requires valid grievances to be raised within thirty calendar days following an occurrence; and that it is not bound or obligated under the collective bargaining agreement because the contract in which it agreed to be a signatory to the CBA is void as a matter of public policy. There is no evidence in the record that BMI objected to the timeliness of the hearing, the period under review, the validity of the Agreement as it relates to BMI, or whether it is bound to the Agreement, before or during the arbitration grievance proceeding.[5] Instead, BMI, by its own submission, demonstrates that it acquiesced in the proceedings.  On November 12, 2009, three days after the LJAB issued its decision finding BMI violated several portions of the Agreement and requesting an audit of BMI's general ledger, BMI informed the Union that "[w]e certainly agree to provide you all pertinent information for the Board to make an intelligent decision on the grievance."  (Respondent's Ex. B.)  This statement weakens

---

[5]  Additionally, BMI fails to explain how it was prejudiced by the time in which the LJAB held its hearing or acknowledges that the period under review by the LJAB was established by the grievances in which Mr. Gombos alleged that "[f]rom March 31, 2009 and continuing to the present, Beckley Mechanical has not paid the proper wages and fringes in accordance with the Standard Form of Union Agreement." (Petitioner's Ex. C (Document No. 1-3)).

BMI's post-arbitration hearing arguments that it felt that it was not subject to the CBA or obligated by any decision of the LJAB. "[BMI] [can] not voluntarily engage in the arbitration of the issues submitted to the arbitrator and then attack the award on grounds not raised before the arbitrator." *Int'l Chem. Workers Union, Local No. 566  v. Mobay Chem. Co.*, 755 F.2d 1107, 1112 (4th Cir. 1985) (citations omitted). Although, this Court could readily find BMI's arguments implausible, this Court finds that a substantive review of these arguments is unwarranted as they are waived because BMI failed to raise them during the arbitration proceeding. *AO Techsnabexport v. Globe Nuclear Services and Supply GNSS, Ltd.*, No. 09-2064, 2010 WL 5158556, * 3 (4th Cir. Dec. 15, 2010) (arguments regarding the inability to cross-examine individuals who made witness statements waived before the district court when no objection was made in the arbitration proceeding) (citing *Kreiter v. Lufthansa German Airlines, Inc.*, 558 F.2d 966, 968 (9th Cir.1977) (defects in proceedings prior to or during arbitration may be waived by party's acquiescence); *Order of Ry. Conductors v. Clinchfield R.R. Co.,* 407 F.2d 985, 988 (6th Cir.1969) (same). Further, this Court finds equally unpersuasive BMI's naked unsupported assertions that the award amounts to a labor practice violation of Sections 8(a)(2) and (b)(6) of the National Labors Relation Act.[6]


## IV.  CONCLUSION

Upon consideration of the foregoing, this Court finds that the parties' Agreement provided the LJAB with the authority to issue its February 26, 2009, award, that the award draws from the essence of the Agreement, and that BMI's motion to vacate the award was filed outside of the three-

---

[6]   This Court notes that the National Labor Relations Board has denied BMI's assertions of the same in its October 28, 2010, and January 5, 2011, decisions.  These decisions are not under review in this matter.

month time period established in 9 U.S.C. § 12.  Therefore, the Court does hereby **ORDER** that

Petitioner's Petition to Enforce the Arbitration Award (Document No. 1) is **GRANTED**.  It is

further **ORDERED** that BMI's Response in Opposition to Petition to Enforce Arbitration Award

and Motion to Vacate Arbitration Award ("Oppn") (Document No. 6) is **DENIED**, and that the

Clerk shall enter a judgment against BMI in the amount of $82,000.00.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any

unrepresented party.

ENTER:          March 23, 2011

IRENE C. BERGER, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA